STATE OF VERMONT

ENVIRONMENTAL COURT

}
In re: Yates Subdivision Application    }    Docket No. 149-6-06 Vtec
    (Appeal of Stutler)    }
}

Decision and Order on Motion for Summary Judgment

Appellant Joyce Stutler appealed from a decision of the Development Review Board (DRB) of the City of St. Albans issued on May 25, 2006, approving an application for a two-lot subdivision of Appellee-Applicants Randolph and Cathy Yates' property at 255 North Main Street. Appellant is represented by Timothy G. Hurlbut, Esq.; Appellee-Applicants are represented by Brian P. Hehir, Esq.; and the City of St. Albans is represented by Robert E. Farrar, Esq. Appellee-Applicants have moved for summary judgment. The following facts are undisputed unless otherwise noted.

Appellee-Applicants' property is located at 255 North Main Street (Route 7), and extends easterly to the end of Stanley Court, a dead-end street maintained by the City. The parcel is approximately 34,112 square feet, or .78 acres in total area. It contains an existing four-unit multi-family dwelling fronting on North Main Street, with two curb cuts on North Main Street on either side of the building, giving access by driveways to a parking area in the rear of the building. The portion of the property containing the multi-family building is located in the B2 Transitional Business zoning district. The remainder of the property, extending easterly is undeveloped and is located in the Low Density Residential zoning district. The property is served by municipal water supply and sewage disposal services.

Appellee-Applicants propose to divide the lot into two resulting lots, with Lot 1 having an area of 21,080 square feet and fronting on North Main Street, and Lot 2 having an area of 13,031 square feet and fronting on the enlarged area at the end of Stanley Court, so that

1

the rear yards of both lots would adjoin at their common boundary.

Lot 1 is proposed to consist of the existing four-unit multi-family building, its driveways and parking lot, located entirely within the B2 Transitional Business zoning district, except for an approximately 6' 3"-wide strip at its easterly end located in the Low Density Residential zoning district. A new single-family residence and attached garage is proposed to be constructed on Lot 2, which is located entirely within the Low Density Residential District. Access to Lot 2 is proposed to be by a short driveway easterly onto land shown on the site plan as being owned by the City, that forms an enlarged area or cul-de-sac at the end of Stanley Court. Appellant's property adjoins the northerly side of the enlarged area at the end of Stanley Court; Lot 2 adjoins its westerly side. Appellant's southerly property line adjoins the northerly property line of Lot 2 by approximately 15.76 feet at the northeast corner of Lot 2. The site plan reflects that site work is proposed for Lot 2 to raise it to an elevation at the house site of 505 feet above sea level, approximately ten feet above the elevation at the rear line of Lot 1, and approximately fifteen feet above the elevation at the middle of the four-unit building on Lot 1.

In this appeal, the Environmental Court must apply the substantive standards that were applicable before the DRB, and considers each issue in the Statement of Questions de novo. That is, on the issues raised by Appellant, this Court sits in place of the DRB to rule on Appellee-Applicants' application anew, as if there had been no decision rendered by the DRB. 10 V.S.A. 8504(h); V.R.E.C.P. 5(g). On summary judgment, this Court is required to view the facts in the light most favorable to the non-moving party, which in this case is Appellant. Montgomery v. Devoid, 2006 VT 127, ¶28 (party opposing summary judgment is entitled to "the benefit of all reasonable doubts and inferences").

Question 1 - Whether a two-lot subdivision at 255 Main Street, a registered historic site, should be permitted

We will address this question as it pertains to the issue of the historic building together with Questions 3 and 4 relating to historic buildings, and will address the issue regarding the required frontage on Stanley Court in connection with Questions 6 and 8.

To the extent that this question calls for the Court to address whether the proposed

subdivision meets the other requirements of the Land Development Regulations applicable to subdivisions, Appellee-Applicants have moved for summary judgment that it does. With regard to the issues raised by that motion, Appellant does not dispute that Appellee-Applicants' application contains the information required by § 902(B)(1); that it is properly classified as a "minor" subdivision pursuant to § 202 because it does not contain more than four lots; that it meets the minimum lot size requirements of 9,500 square feet in the Low Density Residential District (Lot 2) and 5,000 square feet in the B2 Transitional Business Subdistrict (Lot 1); and that the new building on Lot 2 will be served by municipal water and sewer.

Therefore, summary judgment is GRANTED to Appellee-Applicants as to the portion of Question 1 related to the proposed subdivision's compliance with those listed Regulations.

Questions 1, 3, and 4 - related to the effect of the proposed subdivision on the existing building as a National Historic Site or as listed on the National Historic Register

Appellee-Applicants have moved for summary judgment or to dismiss Appellant's Questions 1, 3, and 4, which relate to the historic character of the existing building on Appellee-Applicants' property. Question 1 raises the issue of whether this subdivision should be approved to the extent that it involves a registered, national historic site or building. Appellant's Question 3 raises the issue of whether Appellee-Applicants' property contains a National Historic Site and if so, whether the project will have an adverse effect on the "scenic or natural beauty of the area, aesthetics, or natural sites." Question 4 asks whether proper consideration of the impacts of the "direct and indirect results" of the subdivision "should be taken" pursuant to §106 of the National Historic Preservation Act, 16 U.S.C. §470 et seq.

As a state court with jurisdiction only over matters arising under the laws specified in 4 V.S.A. §1001(b), this Court has no jurisdiction to determine compliance with a federal law unless that federal law is referenced in a state law or City ordinance over which the Court does have jurisdiction. In the Land Development Regulations, only the Design Review

3

standards in Article 8[1] implicate buildings listed on the National Register of Historic Buildings and Places. §§801(E), 802.

Accordingly, Appellee-Applicants' motion for summary judgment must be GRANTED as to Question 4, which is hereby DISMISSED. This Court lacks jurisdiction to determine whether or not anything should be done "pursuant to § 106 of the National Historic Preservation Act."

With respect to Questions 1 and 3, material facts are in dispute as to whether the existing building at 255 North Main Street is listed on the National Register of Historic Buildings and Places, although Appellee-Applicants do not dispute Appellant's assertion that it is on the National Register as an historic Underground Railroad Site, the "Hathaway Tavern." Assuming that it is, under §901(A) the Court must determine whether the proposed subdivision complies with the Land Development Regulations, which include the Design Review provisions made applicable to this subdivision as a "development[] adjacent to buildings listed on the National Register of Historic Buildings and Places," §§801(E), 802, as well as to developments in Design Review districts such as the one in which Lot 1 is located. See Regulations, District Maps, §§1302 & 1303.

Material facts are in dispute, or at least have not been provided to the Court, regarding the effect, if any, of the development proposed for Lot 2 on the existing building on Lot 1. Although the site plan reflects the relative elevations of the ground surface of the two properties, no information has been provided regarding any existing vegetation or any proposed landscaping or screening between Lot 2 and Lot 1 from which the Court could determine whether the proposed subdivision meets the requirements of Article 8 regarding preserving "the character of the historic buildings" and encouraging the "compatibility of new development with the historic architectural qualities." §801(E). Moreover, not all the pages of Article 8 have been provided, so that the Court cannot determine whether any

---

[1] The copy of the Land Development Regulations provided to the Court in connection with these motions is missing occasional pages, including pages 83-84 and 87-88 in Article 8 pertaining to Design Review.

other criteria within that Article are made applicable to this property.

On the other hand, Appellant has failed to raise an issue of fact for trial relating the "scenic or natural beauty of the area, aesthetics, or natural sites" to the historic building issues otherwise raised by Question 3. Accordingly, Appellee-Applicants' motion for summary judgment must be GRANTED as to that aspect of Question 3, which is hereby DISMISSED. The remainder of Questions 1 and 3 remain an issue for trial, with respect to whether the existing building is listed, and the effect of the proposals on Lot 2, if any, on the standards applicable to such development in Article 8, Design Review.

<u>Question 1 as to frontage on Stanley Court, Question 2 as to whether the project "unduly burdens" the City, and Question 7 as to the City's property interest in any portion of the proposed subdivision</u>

Appellant agrees at page 2 of her memorandum that the City does not assert property rights over any portion of the proposed subdivision; the City's attorney advised the Court and the parties that the City asserts no such property claim. Appellant has not come forth with "an affidavit or other <u>evidence</u> that raises a dispute" as to the City's lack of property rights in the subdivision property. <u>Miller v. Merchants Bank</u>, 138 Vt. 235, 237 (Vt. 1980) (emphasis added). Rather, from Appellant's memorandum, it appears that Appellant is making the argument that the City now uses the easterly area of the project property to deposit plowed snow, suggesting that the area would no longer be available for that purpose if Lot 2 is developed. Accordingly, Appellee-Applicants' motion for summary judgment must be GRANTED as to Question 7.

Moreover, even if the City has used a portion of the proposed subdivision property to place plowed snow, such use does not affect whether Lot 2 has ninety-three feet of frontage on Stanley Court in satisfaction of § 401(b). Accordingly, summary judgment is GRANTED to Appellee-Applicants as to the portion of Question 1 related to the proposed subdivision's compliance with § 401(b).

Appellant has not stated with any specificity any other way in which the proposed subdivision is alleged to "unduly burden[]" the City, accordingly, Question 2 is hereby DISMISSED for failure to raise an issue of fact or law for trial.

<u>Questions 5, 6 and 8 as to Appellant's potential property claims to any portion of Lot 2</u>

Appellee-Applicants have moved for summary judgment on Questions 6 and 8 of Appellant's Statement of Questions, and have moved to dismiss Question 5 for failure to state a claim with particularity. All three of these issues appear to relate to Appellant's assertion that she may have obtained an interest in a portion of the proposed subdivision property through adverse possession, or, in the alternative, that she has acquired a prescriptive easement over a portion of the property.

Although Appellant claims in her opposition memorandum to have commissioned a survey to determine "record ownership between Appellant and Appellees," she has not come forth with "an affidavit or other <u>evidence</u> that raises a dispute" for trial as to the fact of ownership. <u>Miller</u>, 138 Vt. at 237 (emphasis added).

More importantly, the Environmental Court does not have jurisdiction to determine property ownership claims. If Appellee-Applicants' site plan is based on a field survey as required by §902(B)(1)(a) of the Land Development Regulations, such survey would constitute the required evidence of title to the property proposed for subdivision. If Appellant were to raise an actual dispute as to title, the parties must resolve it in superior court. See, <u>e.g.</u>, <u>Clermont Terrace Site Plan and Zoning Permit Approvals (Appeal of Curtis)</u>, Docket Nos. 46-2-05 Vtec & 72-4-05 Vtec, slip op. at 6 (Mar. 22, 2006).

Appellee-Applicants must show at trial that the site plan is based on a field survey as required by §902(B)(1)(a). If they make that showing, judgment as a matter of law will be granted on Questions 5, 6, and 8, unless Appellant can bring forward evidence to the contrary. All that this Court can determine as to property ownership, however, is whether Appellee-Applicants have met the standards for approval of a subdivision. Any disputed claims to property ownership must be filed in superior court.

<u>Question 9 as to whether testimony of the landowners on Stanley Court should be given "controlling weight" regarding the potential for traffic congestion</u>

This question does not state an issue of fact or of law for trial, it merely asks an evidentiary question which would be for the trier of fact to determine after hearing the

6

witnesses, and is therefore hereby DISMISSED. In any event, no issue as to the potential effect of the subdivision on traffic congestion on Stanley Court has been raised in the Statement of Questions; the only issue relating to Stanley Court is Question 10 as to parking and snow removal.

<u>Question 10 as to whether there will be adequate room for snow removal and parking with the addition of a curb cut on the Stanley Court cul-de-sac</u>

Appellee-Applicants ask for Question 10 to be dismissed as the DRB found there would be no adverse impacts on snow removal or parking due to the creation of Lot 2 and its curb cut. Because this appeal is not on the record, and no affidavits or evidence was provided on summary judgment to support Appellee-Applicants' motion on this question, Question 10 remains for trial.

Accordingly, based on the foregoing, and as discussed above, it is hereby ORDERED and ADJUDGED that Appellee-Applicants' Motion for Summary Judgment is GRANTED with respect to Questions 2, 4, 7, and 9; is GRANTED in PART as to Questions 1 and 3; is DENIED as to Question 10; and is reserved to be considered at trial as to Question 5, 6 and 8.

Although a trial date was scheduled in this matter for July 3, 2007, it appears from the issues decided by this motion that a much shorter amount of time may be sufficient for the trial, and that it may be able to be scheduled instead in late May. At the telephone conference (see enclosed notice) please be prepared to discuss dates in the last week of May and the first week of June, and whether a half-day of trial will be sufficient for the remaining issues. Please be prepared to file any trial memoranda and requests for findings at the outset of the trial.

Done at Berlin, Vermont, this 23rd day of March, 2007.

_____
Merideth Wright

7

Environmental Judge