2008 VT 4

# Henry Johnson v. Jennifer Harwood and Union Bank

[945 A.2d 875]

No. 06-359

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed January 25, 2008

*John Davis Buckley* of *Davis Buckley, PLLC*, Berlin, for Plaintiff-Appellant.

*Sheldon M. Katz* of *Clark, Long, Werner & Flynn*, Burlington, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** Plaintiff Henry Johnson appeals from the grant of defendant Jennifer Harwood's motion for summary judgment on his claims for breach of an express oral agreement, unjust enrichment, and constructive trust. We reverse.

¶ 2. Limited facts were developed before summary judgment was granted. Plaintiff and defendant had an intimate personal relationship from 1997 until July 2004. The parties lived together from 1999 until the end of their relationship. Beginning in June 2000, the parties had joint bank accounts into which both deposited earnings, and from which they paid bills. From 1999 until 2002 the parties lived together in a rented apartment, and thereafter in a house on land in Waterbury that defendant's parents gave her. During their relationship the parties incurred various debts, including multiple mortgages, a home equity loan, and shared credit-card debts. When the parties broke up in 2004, plaintiff continued living alone for approximately one month in the Waterbury house until plaintiff allowed defendant to return and defendant changed the locks and refused plaintiff entry to the property.

¶ 3. Plaintiff commenced suit in March 2005 by a verified foreclosure complaint.[1] In addition to the verified complaint, in which plaintiff made oath to the truth of the allegations in the pleading, plaintiff took the unusual step of signing and filing a separate affidavit in which plaintiff attested that he had read and reviewed the verified complaint and that the facts therein were "true and accurate to the best of [his] knowledge." The complaint alleged that the parties had express agreements to jointly pay their shared debts and to share the equity in the house if they broke up. Plaintiff also averred in the complaint that defendant had been unjustly enriched. The initial complaint also included claims for foreclosure, partition, and a deficiency judgment, but those claims were deemed waived by the trial court and plaintiff does not seek to pursue them on this appeal. After limited discovery, defendant filed a motion on March 23, 2006, for judgment on the pleadings, V.R.C.P. 12(c), and summary judgment, V.R.C.P. 56. The motion was accompanied by a statement of undisputed material facts, and was not supported by affidavit. See

---

[1] The lien sought to be foreclosed in the complaint was recorded in the Waterbury land records on February 2, 2004, and stated that defendant owed plaintiff $95,000 for materials, labor, and payments relating to work he had done constructing a house on the Waterbury land. See 9 V.S.A. § 1921.

V.R.C.P. 56(b) (defending party may move for summary judgment "with or without supporting affidavits"). The "undisputed" facts set out in defendant's motion included the assertions that plaintiff contributed no collateral for the construction loan to build the Waterbury house, that plaintiff's work to construct the house was substandard, that the "parties did not execute any written agreement with each other regarding [the Waterbury house or land]," and that the Waterbury house "was not to be conveyed to Plaintiff as either a gift or as a purchase."

¶ 4. Plaintiff opposed the motion, arguing that questions of material fact remained in dispute, and that defendant was not entitled to judgment as a matter of law. Plaintiff also filed a statement of disputed facts, as required by Rule 56(c)(2), which referred to specific paragraphs from his verified complaint to rebut defendant's version of the facts. Although plaintiff did not support either his opposition or his statement of disputed facts with a new affidavit, his statement of disputed facts referred specifically to factual allegations in the detailed, verified complaint and the attached exhibits. The trial court — citing Rule 56 and two of our cases interpreting it — found that plaintiff's citation of his complaint was insufficient to rebut defendant's statement of facts.

¶ 5. We review the grant of summary judgment de novo, applying the same standard as the trial court. *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82. In evaluating the grant, we resolve all doubts and inferences in favor of the nonmoving party — here, plaintiff. *Collins v. Thomas*, 2007 VT 92, ¶ 6, 182 Vt. 250, 938 A.2d 1208. The substantive inquiry is twofold: whether there remain genuine issues of material fact and, if not, whether one party is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c)(3). Plaintiffs may not, of course, rest on bare allegations to demonstrate that disputed material facts remain. *Webb v. Leclair*, 2007 VT 65, ¶ 14, 182 Vt. 559, 933 A.2d 177 (mem.). Parties opposing summary judgment cannot create a genuine issue of material fact by contradicting — by affidavit or other evidence — their own unambiguous deposition testimony. *Travelers Ins. Cos. v. Demarle, Inc., USA*, 2005 VT 53, ¶ 9, 178 Vt. 570, 878 A.2d 267 (mem.). Because the trial court incorrectly construed Rule 56 and therefore erroneously found that no genuine issues of material fact remained, we reverse and remand without reaching the second step in the inquiry.

## I.

¶ 6. Our inquiry begins with whether the trial court was correct to disregard plaintiff's verified complaint in evaluating his opposition to summary judgment.[2] The trial court offered several bases for this conclusion. First, it cited Rule 56(e) for the proposition that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Second, the court noted our holding in *Baldwin v. Upper Valley Services, Inc.*, that "[o]pposing allegations must have sufficient support in specific facts to create a genuine issue of material fact." 162 Vt. 51, 55, 644 A.2d 316, 318 (1994). Third, citing *Alpstetten Ass'n v. Kelly*, the trial court stated that the opposing party "must come forward with an opposing affidavit or other evidence that raises a dispute as to the fact or facts at issue." 137 Vt. 508, 514, 408 A.2d 644, 647 (1979). Finally, in a footnote, the trial court noted that plaintiff could not rely on his verified complaint as support for his opposition. See *Spargo v. Governor's Comm'n on Admin. of Justice*, 135 Vt. 333, 334, 376 A.2d 757, 758 (1977) (noting, in dicta, that "verification of a complaint is abolished by V.R.C.P. 11, except where specifically provided for by rule or statute. This being so, we do not consider [a verified complaint] an affidavit to support a summary judgment . . . .").

¶ 7. The trial court's reliance on *Spargo* was misplaced. In *Spargo*, we held that a nineteen-page verified complaint that was "substantially a jumble of unrelated facts" was insufficient to survive a motion to dismiss. *Id.* (quotations omitted). The complaint claimed that the plaintiff, Spargo, had been wrongfully discharged from his employment, but did not allege that the defendant was in any way responsible for the firing. The only wrongful conduct alleged to have been committed by the defendant was failing to give the plaintiff a letter of recommendation after he was fired. Further, we noted that even if we had treated

---

[2] Although defendant's motion for summary judgment was unsworn and unaccompanied by affidavits, plaintiff did not oppose the motion on this basis, but instead disputed the facts contained in the unsworn statement by reference to his own verified complaint. In light of our disposition of the appeal, the deficient form of the summary-judgment motion is of no moment.

the verified complaint as an affidavit, it would have been untimely filed under Rule 56. *Id.* at 335, 376 A.2d at 758. *Spargo* is a slender reed on which to hang a summary judgment.

¶ 8. We have cited *Spargo* only twice in the three decades since it was decided. *Middlebury Am. Legion Post No. 27 v. Peck*, 139 Vt. 628, 632, 432 A.2d 1183, 1184 (1981), and *Fairchild v. W. Rutland Sch. Dist.*, 135 Vt. 282, 287, 376 A.2d 28, 31 (1977). Neither case is long on analysis. In *Middlebury American Legion*, we stated that the plaintiff's "complaint . . . not required to be verified, cannot be considered as an affidavit to support its motion for summary judgment." 139 Vt. at 632, 432 A.2d at 1184. It is unclear from that opinion whether the complaint, "not required to be verified," was in fact verified. In *Fairchild*, we stated explicitly that the plaintiff's summary judgment motion should have been denied regardless of the use or nonuse of his verified complaint. 135 Vt. at 283, 376 A.2d at 29-30 ("[T]he major question, the one determinative of this appeal, is whether the failure of the school board to renew the appellee's agreement for teaching . . . constituted a 'grievance' as that term was defined in the controlling collective bargaining agreement."). We cited *Spargo* only in dicta. *Id.* at 287, 376 A.2d at 31. Finally, without citing *Spargo*, we stated in passing in a 1987 opinion that "a sworn pleading is the equivalent of an affidavit" when evaluating a motion for summary judgment. *Pierce v. Riggs*, 149 Vt. 136, 138-39, 540 A.2d 655, 657 (1987).

¶ 9. To the extent that our brief entry order in *Spargo* and our subsequent cursory citations of it support the trial court's reading, we take this opportunity to overrule them and join the many federal and state courts that allow verified complaints — when referred to specifically in a party's concise statement of disputed facts — to oppose Rule 56 motions. See, e.g., *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (original complaint, which was "verified as true and correct under penalty of perjury," was competent summary-judgment evidence); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992); *Sammons v. Taylor*, 967 F.2d 1533, 1544-45 n.5 (11th Cir. 1992);

*Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991) ("We think the better rule is that a verified complaint ought to be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e)."); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge."); *Williams v. Adams*, 935 F.2d 960, 961-62 (8th Cir. 1991); *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987); *McCoy v. Lyons*, 820 P.2d 360, 365 (Idaho 1991) ("The sworn statements contained in the . . . verified complaint, the numerous exhibits attached thereto and the . . . depositions satisfy the requirements of [Rule 56(e)]."); *Pupecki v. James Madison Corp.*, 382 N.E.2d 1030, 1033 (Mass. 1978) ("The complaint was verified and is therefore treated as an affidavit in so far as it contains specific facts that the signer knows to be true."); *Page v. Sloan*, 190 S.E.2d 189, 194 (N.C. 1972); accord 11 Moore et al., Moore's Federal Practice § 56.14[1][a], at 56-182 to 56-183 (3d ed. 2007) ("A verified pleading that contains facts sworn to by a party may be used to support or oppose a motion for summary judgment if it meets all the requirements for an affidavit specified by Rule 56(e)(1) . . . .").

¶ 10. The logic of these cases, contrary to the trial court's reading of *Spargo*, is that Rule 56's purposes are served equally well by sworn statements other than affidavits, provided that those statements meet the rule's other requirements. Where, as here, the nonmoving party's original complaint was sworn to under oath — and was accompanied by an independent affidavit attesting to the complaint's truth — the broader purposes of the rules are not served by requiring the nonmoving party to resubmit in affidavit form the sworn statements already before the court in the verified complaint. See V.R.C.P. 1 ("[The rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."). When the nonmoving party opposes summary judgment by filing a "separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried," see V.R.C.P. 56(c)(2), and that statement refers to the verified complaint filed in the same suit, the trial court should evaluate the statement in the same manner as if it referred to an

affidavit. Plaintiff here filed just such a short and concise statement, and accordingly has fully complied with the requirements of Rule 56(c)(2).

## II.

¶ 11. Taking into account plaintiff's verified complaint, and giving plaintiff the benefit of all reasonable doubts and inferences, *City of Burlington v. Nat'l Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994), we turn to the disputed facts asserted by plaintiff.

¶ 12. First, plaintiff disputes defendant's contention that plaintiff gave no collateral for the construction loan. Plaintiff asserts, on this point, that "[w]ithout plaintiff, there would have been no loan for construction." In his statement of disputed facts, plaintiff cites several specific paragraphs in his verified complaint in support of this position. Those paragraphs, however, support only the proposition that plaintiff and defendant were both personally liable on the construction loan and other subsequent loans, and do not raise a genuine issue as to whether he contributed collateral for any of the debts. See Black's Law Dictionary 278 (8th ed. 2004) (defining collateral as "[p]roperty that is pledged as security against a debt; the property subject to a security interest or agricultural lien"). Further, plaintiff explicitly admitted, in response to defendant's interrogatories, that he contributed no collateral for the loan:

> 49. Admit that you did not contribute any collateral for the construction loan.
>
> ANSWER: Admitted.
>
> 50. Who did contribute the collateral?
>
> ANSWER: [Defendant] pledged the land and the bank relied upon my credit history.

Credit history is not collateral. There was no genuine issue of material fact as to whether plaintiff contributed collateral for the construction loan.

¶ 13. Next, plaintiff contends that the parties had an express agreement to convey the Waterbury property to him after his divorce was finalized. In support of this contention he cites several paragraphs in his verified complaint and his divorce decree, which

refers to his "equitable interest" in the property. The complaint alleged as follows:

> 22. Throughout their relationship, [defendant] wrote letters and other documents promising to convey the land to both parties once one or more mortgages were obtained once Plaintiff was divorced finally from his wife.
>
> . . . .
>
> 24. At the time of conveyance [from defendant's parents], Plaintiff understood that the real property was to be conveyed to both him and [defendant] once his divorce . . . was finalized.
>
> 25. In fact, . . . [defendant's divorce stipulation] specifically stated that Henry had "obtained an equitable interest in and to [the Waterbury property] . . . .
>
> 26. Defendant Harwood knew of [the divorce stipulation], and approved of [it].
>
> 27. Defendant Harwood specifically told Plaintiff that the real property would be conveyed to both of them once Plaintiff was divorced from his wife.
>
> . . . .
>
> 75. The parties agreed that should their partnership dissolve, the parties' home . . . would be sold, equity to be equally shared.

The fact that plaintiff's divorce decree reflects plaintiff's belief that he had an equitable interest in the Waterbury property — whether defendant knew of that expectation or not — does not raise a genuine issue of material fact sufficient to defeat summary judgment.

¶ 14. Plaintiff also asserted in the complaint, however, that defendant wrote "letters and other documents promising to convey the land" to him. This assertion, as defendant notes, is arguably contrary to plaintiff's own discovery responses.

21. By what specific terms did you and defendant agree to "benefit from whatever equity or assets were accumulated and appreciated"? Produce any and all written documentation that demonstrates that agreement.

ANSWER: We promised one another that we would live there together forever; there was no written agreement.

. . . .

27. Do you assert that you were to receive the property as a gift or a purchase?

ANSWER: Neither.

A party opposing summary judgment cannot create a genuine issue of material fact via reference to an unsworn pleading that contradicts that party's sworn testimony, *Demarle*, 2005 VT 53, ¶ 9. Here, however, any conflict between plaintiff's interrogatory responses and his verified complaint simply creates a credibility issue. Indeed, the responses are not logically contrary to the assertions in the complaint; the former state that there was no "written agreement" while the latter averred that defendant sent "letters and other documents promising to convey the land." Defendant in her motion for summary judgment asserted only that there was no "written agreement [between the parties] regarding the . . . land or the home constructed thereon," or "written contract for Plaintiff to purchase the property." There remains, then, a genuine issue of material fact as to whether defendant promised plaintiff she would convey an interest in the real property to him.

■ ¶ 15. Further, plaintiff's sworn pleadings, referred to in his Rule 56(c)(2) statement, raise a genuine issue of material fact as to whether defendant was unjustly enriched by her representations to plaintiff regarding the debts they incurred during their relationship. A claim for unjust enrichment must allege that a benefit was conferred on defendant, that defendant accepted the benefit, and that it would be inequitable to allow defendant to retain the benefit. *Center v. Mad River Corp.*, 151 Vt. 408, 412, 561 A.2d 90, 93 (1989). In ruling on such a claim, "the inquiry is

whether, in light of the totality of the circumstances, equity and good conscience demand that the defendant return that which the plaintiff seeks to recover." *Brookside Mem'ls, Inc. v. Barre City*, 167 Vt. 558, 560, 702 A.2d 47, 50 (1997) (mem.).

¶ 16. On this point, the trial court concluded that there was "no evidence at all of any mutual expectation by the parties that [plaintiff] would receive payment for work he did on the house, or that he would receive any payments from [defendant] if the relationship failed." Further, the court held that there was "nothing to suggest that [plaintiff's] work or financial contributions (including taking on joint debts) were offered for any reason other than the parties' intimate relationship." But these conclusions contradict the facts alleged in plaintiff's verified complaint, which the trial court erroneously disregarded. Specifically, plaintiff alleged that "[t]he parties agreed that should their partnership dissolve, the parties' [Waterbury property] would be sold, equity to be equally shared," and that "[defendant] wrote letters and other documents promising to convey the land to both parties once one or more mortgages were obtained once plaintiff was divorced." Plaintiff further alleged that the parties "combined [their] earnings and [their] indebtedness and agreed to use [their] earnings to pay the expenses of living together and satisfying [their] joint and individual financial obligations." What impact these oral agreements, letters, and documents may have had on plaintiff's conduct remains in dispute, as does their very existence.

¶ 17. Accordingly, on remand, the parties should conduct further discovery and, if warranted, a trial on the merits of plaintiff's breach-of-express-agreement and unjust-enrichment claims.

*Reversed and remanded.*